IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ADRIAN E. ROUSE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:14CV359 |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Plaintiff Adrian E. Rouse ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. § 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The Parties have filed cross-motions for judgment [Doc. #10; Doc. #11], and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on December 10, 2010, alleging a disability onset date of September 1, 2008. He later amended his alleged onset date to September 1,

2010. (Tr. at 277.)[1] His applications were denied initially on April 1, 2011, and upon reconsideration on July 18, 2011. Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). On November 27, 2012, Plaintiff, represented by his attorney, appeared and testified at the hearing, and an impartial vocational expert testified telephonically. The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act and, on March 5, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

4

more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between his amended alleged onset date and the date of his hearing. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from a single severe impairment: seizure disorder, controlled when compliant. (Tr. at 10.) The ALJ found at step three that this impairment did not meet or equal a disability listing. He then assessed Plaintiff's RFC and determined that Plaintiff could perform a full range of work at all exertional levels with the restrictions that he could never climb ladders, ropes or scaffolds, must avoid moderate exposure to hazards, such as moving machinery and unprotected heights, and, "as a result of seizures, would be limited to only simple, routine, repetitive tasks, in that he can apply common sense understanding to carry out oral, written, and diagrammatic instructions." (Tr. at 11.) Based on the vocational expert's testimony, the ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work. However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the community and was therefore not disabled. (Tr. at 14-15.)

Plaintiff now claims that the ALJ erred in making his disability determination by failing to consider Plaintiff's organic mental impairment and by failing to utilize the required psychiatric review technique when evaluating the severity of Plaintiff's mental impairment.

In considering these issues, the Court notes that the applicable regulations set forth a special technique for assessing mental impairments at step two of the sequential analysis for determining whether a claimant has a medically determinable mental impairment that causes functional limitations. See 20 C.F.R. 404.1520a. "Where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a [psychiatric review technique form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005); see also 20 C.F.R. § 404.1520a(a). Although ALJs were once required to enter this information into a standard form and to append that form to their decision, they need now only incorporate the pertinent findings and conclusions based on the technique. See Richards v. Astrue, 370 F. App'x 727, 730 (7th Cir. 2010).

"The special technique requires that the ALJ evaluate the claimant's 'pertinent symptoms, signs, and laboratory findings' to determine whether the claimant has a medically determinable mental impairment. If the claimant has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration,

7

persistence, or pace; and episodes of decompensation. These functional areas are known as the 'B criteria'." Craft v. Astrue, 539 F.3d 668, 674 (7th Cir. 2008) (internal citations omitted). The first three functional areas are rated on a scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The fourth functional area, episodes of decompensation, is rated on scale of none, one or two, three and four or more. Id. "If the ALJ rates the first three functional areas as none or mild and the fourth area as none, then generally the impairment is not considered severe. Otherwise, the impairment is considered severe, and the ALJ must determine whether it meets or is equivalent in severity to a listed mental disorder. If the mental impairment does not meet or is not equivalent to any listing, then the ALJ will assess the claimant's RFC." Craft, 539 F.3d at 675 (internal citations omitted). The Regulations explicitly provide that,

> the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

In the present case, although the ALJ made reference to the four functional areas, he did not offer any conclusions as to Plaintiff's degree of limitation in each of the functional areas. The ALJ stated:

> As for the opinion evidence, the state agency consultants evaluated the claimant's mental health impairments under Listings 12.02 (organic mental

8

> disorder) and 12.04 (affective disorders) on March 23, 2011 and July 15, 2011; and found that the claimant had moderate restrictions in activities of daily living, moderate restrictions in social functioning; moderate restrictions in concentration, persistence, and pace; and no episodes of decompensation each of extended duration.

(Tr. at 13.) However, after consideration of those opinions, the ALJ gave them "little weight, as there is nothing in the objective medical evidence of record to show that the claimant suffers from an affective disorder." (Id.) The ALJ did not address the evaluations with respect to an organic mental disorder. Moreover, by giving those opinions little weight, and by failing to otherwise offer his own findings as to the same, the ALJ essentially left any conclusions regarding Plaintiff's abilities in the four functional areas unresolved, and, as such, the ALJ did not "include a specific finding as to the degree of limitation in each of the functional areas described" as required by the Regulations.

The Commissioner contends that any failure on the part of the ALJ to apply the PRT is harmless given that the ALJ continued beyond step 2 of the deliberative process. Indeed, as the Commissioner notes, "[t]he failure of an ALJ to find an impairment to be severe at Step 2 . . . is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process." Cook ex rel. A.C. v. Colvin, No. 2:11-cv-362, 2013 WL 1288156, at *4 (E.D. Va. Mar. 1, 2013). Courts have applied this principle in cases where the ALJ failed to apply the PRT at step 2 of the deliberative process, but later adequately addressed the claimant's mental impairments. See, e.g., Teaster v. Colvin, No.

9

1:13CV253-RJC-DSC, 2014 WL 2712442, at *3 (W.D.N.C. May 14, 2014) ("The undersigned concludes that any failure to discuss mental impairments or use the PRT at step two of the sequential evaluation is harmless when the ALJ proceeds to evaluate Plaintiff's mental impairments at a subsequent step."); Dennis v. Colvin, No. 6:12-cv-0417-CL, 2013 WL 4735572, at *5 (D. Or. Aug. 30, 2013) ("Under the PRT, if the claimant presents a colorable claim of mental impairment, the ALJ must determine whether the claimant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, and determine the severity of the mental impairment. Then, if the impairment is severe, the ALJ continues on to step three of the original five-step inquiry. However, when step two is resolved in the claimant's favor, an ALJ's failure to find other severe impairments is likely harmless error." (internal citations omitted); see also Felton-Miller v. Astrue, 459 F. App'x 226 (4th Cir. 2011) ("The ALJ concluded that Felton–Miller's depressive disorder was a severe impairment at step two of the sequential process without discussion of the special technique. At step three, the ALJ listed the four functional areas and analyzed the impact of Felton–Miller's depressive disorder on these areas. The decision discusses the medical records relevant to Felton–Miller's treatment for depression in assessing her mental RFC. We conclude that the ALJ assessed Felton–Miller's mental RFC in accordance with regulations."). Courts have also concluded that the failure to utilize the PRT could be harmless if there was no credible evidence of a severe mental impairment. See Cuthrell v. Astrue, 702 F.3d 1114, 1118 (8th Cir. 2013) ("Although failure to complete the

10

PRT may itself be reversible error, this court has left the door open to harmless-error analysis. . . . This court has found harmless error where there is no credible evidence of a severe mental impairment."); King v. Colvin, No. 4:13-022-DGK-SSA, 2014 WL 309284, at *2 (W.D. Mo. Jan. 28, 2014) ("[The ALJ] also did not discuss the psychiatric review technique form [ ] which is required when mental impairments are present. Although the ALJ technically erred at step two by not labeling each of Plaintiff's mental impairments as 'non-severe' and failing to discuss the PRT, these are harmless errors because there is no credible evidence of any severe mental impairments on the record." (citations omitted)).[4]

In the present case, in considering whether the failure to utilize the PRT was harmless, the Court cannot find that there was no credible evidence of a severe mental impairment.[5] Indeed, the state agency consultants concluded that Plaintiff's organic mental disorders constituted a severe mental impairment, but the ALJ never specifically addressed an organic mental impairment. In addition, the ALJ ultimately included a restriction to "simple, routine, repetitive tasks" but that restriction is seemingly inherently inconsistent with any assertion that Plaintiff did not suffer from a severe mental impairment, whether independent from or in conjunction with his seizure disorder. Nor can it be said that by

---

[4] "The Fourth Circuit has not addressed whether the ALJ's failure to comply with 20 C.F.R. § 404.1520a necessitates remand. Other circuits considering the issue are split on whether such a failure mandates remand or whether the error may be held harmless." Crocker v. Astrue, No. 1:11-1629-CMC-SVH, 2012 WL 5985657, at *10 (D.S.C. Nov. 14, 2012).

[5] In the briefing, Plaintiff notes the medical evidence of Plaintiff's mental impairment, including evidence of cognitive decline and brain scans showing atrophy consistent with a prior head trauma that was also the cause of his seizures. (Tr. at 328, 332, 339, 341, 353, 401, 416.)

11

giving the opinions of the state consultants little weight, the ALJ was effectively offering his own conclusions that Plaintiff suffered no limitations in the four functional areas, as that again would be inconsistent with the ALJ's ultimate RFC restrictions. Therefore, the ALJ's failure to conduct the requisite analysis at step two can only be considered harmless if the ALJ sufficiently evaluated Plaintiff's mental impairments at a subsequent step.

In this case, however, the ALJ did not consider Plaintiff's organic mental impairment at a subsequent step and did not further assess Plaintiff's functional limitations as a result of his mental impairment. The ALJ did conclude that Plaintiff was restricted to "moderate limitations in concentration, persistence, and pace based on his seizures" (Tr. at 13), and noted that, "as a result of seizures," Plaintiff's RFC was limited "to only simple, routine, repetitive tasks, in that he can apply common sense understanding to carry out oral, written and diagrammatic instructions" (Tr. at 11). However, the ALJ did not make any findings supporting these determinations, and did not address the other functional areas at all.[6] In the circumstances, the ALJ's failure to apply the PRT hinders this Court's ability to engage in any meaningful review of the ALJ's conclusion regarding the effects of that impairment, and thus cannot be considered harmless. Cf. Cuthrell v. Astrue, 702 F.3d 1114, 1118 (8th Cir. 2013) ("Here, the ALJ specifically found that Cuthrell has the severe impairment of a closed-head injury, with symptoms that are (as discussed) mental in nature. Given that finding, the

---

[6] In contrast, the state agency consultants found moderate restrictions in activities of daily living, moderate restrictions in social functioning, and moderate restrictions in concentration, persistence, and pace, and limited Plaintiff to simple, routine, repetitive tasks in a low stress, non-production setting with minimal social demands. (Tr. at 105, 117, 133, 141, 150, 158.)

ALJ's failure to complete the PRT is not harmless."); McGuinness v. Colvin, No. CIV. TMD 13-1573, 2014 WL 4854857, at *8 (D. Md. Sept. 29, 2014) ("Here, the Commissioner contends that the ALJ's error in failing to apply the PRT in this case at steps two and three of the sequential evaluation process was harmless because the ALJ's evaluation of Plaintiff's impairments fulfilled the purposes of the technique and because the Court can readily determine the reasons for the ALJ's decision. However, '[b]ecause the ALJ's decision lacks consideration of these factors and their impact on [her] ultimate conclusion as to [Plaintiff's] RFC, [the Court] cannot even evaluate the Commissioner's contention that the ALJ's error was harmless.'" (quoting Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005)); Haynes v. Astrue, No. 3:11-CV-2268-P (BK), 2012 WL 1969335, at *3 (N.D. Tex. May 4, 2012) ("The ALJ only made limited mention of Plaintiff's mental . . . evidence. Consequently, this Court is unable to discern the ALJ's findings regarding the degree of Plaintiff's limitations in each of the four functional areas, or even if the ALJ properly considered all evidence relevant to those areas. . . . Because the ALJ's failure to adhere to the regulations prevents effective review by this Court, it is not harmless.").

Finally, the Court also notes that to the extent the ALJ did find moderate limitations in concentration, persistence, and pace (Tr. at 13), the ALJ did not address those limitations further, and in particular did not further specify how those limitations were addressed in the RFC. See Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) ("[W]e agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration,

13

persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Court need not consider this specific issue further in the present case because ultimately the Court concludes that the ALJ's failure to follow the requisite PRT analysis was not harmless, given that the lack of analysis of these issues impedes effective judicial review.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 28th day of July, 2015.

                                                                             /s/ Joi Elizabeth Peake
                                                                      United States Magistrate Judge